D'MEZA (MYERS v.). See Case No. 9.987.

---

## Case No. 3,938.

### The D. M. FRENCH.

[1 Lowell, 43.][1]

District Court, D. Massachusetts. Jan., 1865.

MARITIME LIENS—LACHES—BONA FIDE PURCHASERS.

1. Secret liens must be enforced with reasonable diligence as against bonâ fide purchasers without notice.

[Cited in The Bristol, 11 Fed. 163.]

2. Where a vessel, owned in New Jersey, became subject to a lien for damage by collision, to a vessel owned in Boston, and afterwards came within this judicial district on three voyages, one of which arrivals was known to the libellants; and was then nearly four years after the collision, sold to bona fide purchasers without notice: Held, that a libel in rem, filed four years and one month after the collision, was too late.

[Cited in The C. N. Johnson, 19 Fed. 784.]

3. A sale by one of the original purchasers to another of them, of part of the vessel, pending the collision cause, will not affect that share with a liability to which it was not subject in the hands of the seller.

C. G. Thomas, for libellants.

H. A. Scudder, for claimants.

LOWELL, District Judge. This is a cause of damage promoted by the owners of a ballast sloop against the schooner D. M. French, for a collision which took place in that part of the harbor of Boston called "The Narrows," in August, 1858. The sloop was sunk and became a total loss, and her master and part-owner was drowned. The libel was filed in September, 1862. The case is one of great hardship for the libellants, who are poor; and if the facts of the collision are such as they allege, about which, however, there is much conflict of evidence, they would have been entitled to recover all their pecuniary losses by this disaster, in a court of admiralty, had their libel been brought in due season.

But they have applied to the court too late. A little more than four years had passed after the damage was sustained, before their libel was filed. In the mean time, and near the end of that period, the claimants had bought the schooner, for a full price, in good faith, and without notice of any liens, or any reason to suspect the existence of any. This is proved beyond controversy. It is the policy of courts of admiralty to require that secret liens shall be enforced within a reasonable time;

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

-and if this be not done it is at the risk of the lien-holder; and this for the same obvious reasons which have induced all nations to require the record or publication of liens, such as mortgages. etc., wherever this course is practicable. Where no injury would result from granting the remedy. and there is reason to believe that no evidence has been lost by the delay, the holders may sustain a suit after a very considerable period, even, in the United States, after the lapse of the time prescribed by the statutes of the state as a peremptory bar to similar actions. But when there is danger of injustice between the parties, or the rights of innocent third persons will be affected. the rule of diligence is held in. its strictness. A rather striking case of this kind is The Royal Arch. Swab. 269.

What is a reasonable time, must, of course, depend upon the circumstances of each case. As far as any general rule has been adopted it is, perhaps, that the lien will be presumed to be waived, as against innocent third parties, if a fair opportunity for its enforcement has not been availed of. See The Lillie Mills [Case No. 8.352]; The Eliza Jane [Id. 4,363]; Stillman v. The Buckeye State [Id. 13,445]. And so of a mortgage which the holder has neglected to record. The Romp [Id. 12,030]. The cases in which the secret lien has been upheld after a considerable lapse of time, proceed upon the ground, that the first proper occasion has been used in prosecuting it. The Mary [Id. 9,186]; Cole v. The Atlantic [Id. 2,-976]; The Rebecca [Id. 11,619]. No very exact line of distinction is adopted between the different classes of secret liens; but bottomry holders are expected, from the nature of their contract, to proceed with peculiar diligence; and a like rule would perhaps be applied to salvors, whose delay might seriously embarrass the necessary adjustment between contributory interests.

In this case the schooner was owned in New Jersey, and her name and that of her home port were painted on her stern. and were seen by two of the libellants; for though one of them desires to have it understood that he knew only the name of the town, but not of the state, it is apparent from other parts of his evidence that he must have been aware of that also. And the other libellant does not deny full knowledge. This schooner, thus owned in a town easily accessible from Boston by railroad, came to the port of Salem, in this district, on the voyage immediately after the collision. This fact was known to the libellants, and they sent a person to Salem to look for her: The evidence does not show what the agent did, or why he failed to effect a settlement of the damages. nor why this action was not entered at that time. Afterwards, and not long before the sale of the schooner, she brought a cargo to Fall River. and was there for six days; and she soon after lay at New Bedford for a like period.

Whether, with the modes of communication now within reach of every one, lien-holders might not be required to follow a vessel from Massachusetts to New Jersey, at the risk of losing their privilege, I am not called on to decide, because I feel bound to hold that these libellants have lost their remedy against the vessel in competition with innocent purchasers, by neglecting to proceed when the schooner was known to them to be within reach of the process of this court. See the cases above cited, and The Admiral [Id. 84]; The General Jackson [Id. 5,314]; The Hercyna, Stu. Adm. 274.

It was proved that one of the claimants has, pending this suit, sold his interest to another of them, both having been, originally, bona fide purchasers without notice. It was argued that, so far as this fraction was concerned, the present holder could not have the benefit of the rule in favor of purchasers. But the answer is obvious, that this suit depends upon the state of facts which existed when it was instituted. And this not only technically, but for reasons of substantial justice. The rule is well settled that a person who has bought in good faith, without notice of an equity, and thereby holds a good title, can convey an equally good title to any purchaser, whether that purchaser have notice of the equity or not. Story, Eq. § 1503a. Were it otherwise, the title which the law holds good might be wholly valueless to the owner; for when any event has happened, which is notice to all the world. he could not sell at all. The trifling discount which was allowed in this case, if any was allowed. which is not certain, stood for a sort of premium or guarantee of what the decision of this case would be. The price represented the value of the property in the hands of the seller, and not a supposed diminution of value caused by the act of selling. Decree for the claimants.